UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

WENDELL S.,[1]

    **Plaintiff,**

v.

Case No. 3:20-cv-00318
Magistrate Judge Norah McCann King

COMMISSIONER OF SOCIAL SECURITY,[2]

    **Defendant.**

## OPINION AND ORDER

This matter comes before the Court pursuant to Section 205(g) of the Social Security Act, as amended, 42 U.S.C. § 405(g), regarding the application of Plaintiff Wendell S. for Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401 *et seq*. Plaintiff appeals from the final decision of the Commissioner of Social Security denying that application. This matter is now before the Court, with the consent of the parties, *see Joint Consent of the Parties*, ECF No. 5, on *Plaintiff's Statement of Errors*, ECF No. 12, *Defendant's Memorandum in Opposition*, ECF No. 16, *Plaintiff's Reply*, ECF No. 17, and the *Certified Administrative Record*, ECF No. 10. After careful consideration of the entire record, the Court decides this matter pursuant to Rule 78(b) of the Federal Rules of Civil Procedure. For the reasons that follow, the Court denies *Plaintiff's Statement of Errors* and affirms the Commissioner's decision.

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that, due to significant privacy concerns in social security cases, federal courts should refer to plaintiffs in such cases by only their first names and last initials. *See also* S.D. Ohio General Order 22-01.

[2] Kilolo Kijakazi is the Acting Commissioner of Social Security. *See* Fed. R. Civ. P. 25(d).

1

I. **PROCEDURAL HISTORY**

On January 7, 2019, Plaintiff filed an application for benefits, alleging that he has been disabled since June 6, 2014, due to a number of physical and mental impairments. R. 160-63.[3] The application was denied initially and upon reconsideration and Plaintiff sought a *de novo* hearing before an administrative law judge. R. 104-18. Administrative Law Judge ("ALJ") Stuart Adkins held a hearing on October 21, 2019, at which Plaintiff, who was represented by counsel, testified, as did a vocational expert. R. 30-69. In a decision dated December 27, 2019, the ALJ concluded that Plaintiff was not disabled within the meaning of the Social Security Act at any time from June 6, 2014, Plaintiff's alleged disability onset date, through June 30, 2018, the date on which Plaintiff was last insured. R. 15-26. That decision became the final decision of the Commissioner of Social Security when the Appeals Council declined review on June 3, 2020. R. 1-6. Plaintiff timely filed this appeal pursuant to 42 U.S.C. § 405(g). ECF No. 1. On March 23, 2022, the case was reassigned to the undersigned. ECF No. 19. The matter is ripe for disposition.

II. **LEGAL STANDARD**

A. **Standard of Review**

In reviewing applications for Social Security disability benefits, "[t]he Commissioner's conclusion will be affirmed absent a determination that the ALJ failed to apply the correct legal standard or made fact findings unsupported by substantial evidence in the record." *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010); *see also* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . ."). The United States Supreme Court has explained the substantial evidence standard as follows:

---

[3] References to pages as they appear in the Certified Administrative Record will be cited as "R. __."

> Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains sufficien[t] evidence to support the agency's factual determinations. And whatever the meaning of substantial in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is more than a mere scintilla. It means – and means only – such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.

*Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019) (internal citations and quotation marks omitted); *see also Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (citation and internal quotations omitted). In addition, "'[w]here substantial evidence supports the [Commissioner's] determination, it is conclusive, even if substantial evidence also supports the opposite conclusion.'" *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020) (quoting *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)); *see also Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) ("Therefore, if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'") (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). "Yet, even if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers v. Comm'r Soc. Sec. Admin.*, 582 F.3d 647, 651 (6th Cir. 2009) (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

### B. Sequential Evaluation Process

The Social Security Act establishes a five-step sequential evaluation process for determining whether a plaintiff is disabled within the meaning of the statute. 20 C.F.R. § 404.1520(a)(4). "The claimant bears the burden of proof through step four; at step five, the

burden shifts to the Commissioner." *Rabbers*, 582 F.3d at 652 (*citing Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003)).

At step one, the ALJ determines whether the plaintiff is currently engaged in substantial gainful activity. 20 C.F.R. § 404.1520(b). If so, then the inquiry ends because the plaintiff is not disabled.

At step two, the ALJ decides whether the plaintiff has a "severe impairment" or combination of impairments that "significantly limits [the plaintiff's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). If the plaintiff does not have a severe impairment or combination of impairments, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to step three.

At step three, the ALJ decides whether the plaintiff's impairment or combination of impairments "meets" or "medically equals" the severity of an impairment in the Listing of Impairments ("Listing") found at 20 C.F.R. § 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). If so, then the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least 12 months. *Id.* at § 404.1509. Otherwise, the ALJ proceeds to step four.

At step four, the ALJ must determine the plaintiff's residual functional capacity ("RFC") and determine whether the plaintiff can perform past relevant work. 20 C.F.R. § 404.1520(e), (f). If the plaintiff can perform past relevant work, then the inquiry ends because the plaintiff is not disabled. Otherwise, the ALJ proceeds to the final step.

At step five, the ALJ must decide whether the plaintiff, considering the plaintiff's RFC, age, education, and work experience, can perform other jobs that exist in significant numbers in the national economy. 20 C.F.R. § 404.1520(g). If the ALJ determines that the plaintiff can do

so, then the plaintiff is not disabled. Otherwise, the plaintiff is presumed to be disabled if the impairment or combination of impairments has lasted or is expected to last for a continuous period of at least twelve months.

### III. ALJ DECISION AND APPELLATE ISSUES

The Plaintiff was 51 years old on the date on which he was last insured for disability insurance benefits. R. 25. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity between June 6, 2014, Plaintiff's alleged disability onset date, and the date on which he was last insured. R. 17.

At step two, the ALJ found that Plaintiff suffered from the following severe impairments: emphysema; chronic obstructive pulmonary disorder; coronary artery disease; degenerative disc disease of the lumbar/cervical spine; diabetes mellitus, type 2; and status post quadruple bypass. *Id*.

At step three, the ALJ found that Plaintiff did not suffer an impairment or combination of impairments that met or medically equaled the severity of any Listing. R. 18.

At step four, the ALJ found that Plaintiff had the RFC to perform light work subject to various additional limitations:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk for about 6 hours and sit for about 6 hours in an 8 hour workday; would be permitted to alternate between sitting and standing every 20 minutes while at the workstation; can never climb ladders ropes and scaffolds; can occasionally climb ramps and stairs, stoop, crouch and crawl; can frequently kneel; can frequently handle finger and feel with the right upper extremity; can have occasional exposure to extreme cold, extreme heat, humidity, dusts, odors, fumes, and pulmonary irritants; should avoid unprotected heights and dangerous machinery.

R. 19. The ALJ also found that this RFC did not permit the performance of Plaintiff's past

relevant work as a material handler, slicing machine operator, and assembler. R. 24.

At step five and relying on the testimony of the vocational expert, the ALJ found that a significant number of jobs—*e.g.,* routing clerk, inspector, and mail clerk—existed in the national economy and could be performed by Plaintiff. R. 25. The ALJ therefore concluded that Plaintiff was not disabled within the meaning of the Social Security Act from June 6, 2014, his alleged disability onset date, through the date on which he was last insured. R. 26.

Plaintiff disagrees with the ALJ's findings and asks that the decision of the Commissioner be reversed and remanded with directions for the granting of benefits or, alternatively, for further proceedings. *Plaintiff's Statement of Errors,* ECF No. 12; *Plaintiff's Reply Brief*, ECF No. 17. The Acting Commissioner takes the position that her decision should be affirmed in its entirety because the ALJ's decision correctly applied the governing legal standards, reflected consideration of the entire record, and was supported by sufficient explanation and substantial evidence. *Defendant's Brief,* ECF No. 16.

## IV. RELEVANT EVIDENCE

In January 2019, Anne Prosperi, D.O., performed an initial review of the evidence of record on behalf of the state agency, R. 75-78, and concluded that the record documented severe ischemic heart disease, among other severe impairments. R. 75. According to Dr. Prosperi, Plaintiff could lift/carry 20 pounds occasionally and ten pounds frequently. R. 76. Plaintiff could sit and stand/walk for approximately six hours during an eight hour workday. R. 77. Plaintiff was unlimited in his ability to push or pull. *Id*. Turning to postural limitations, Dr. Prosperi opined that Plaintiff could occasionally climb ramps and stairs, stoop, crouch, and crawl. *Id*. Plaintiff could frequently kneel and balance, but could never climb ladders, ropes, or scaffolds. *Id*. Finally, Dr. Prosperi opined that Plaintiff should avoid concentrated exposure to extreme heat

and cold, humidity, fumes, odors, gases, etc. R.77-78. He should also avoid all hazardous heights and dangerous machinery. R. 78. In March 2019, Indira Jasti, M.D., reviewed the medical evidence of record on reconsideration for the state agency, R. 86-89, and agreed with Dr. Prosperi's findings and opinions. R. 87-89.

In his decision, the ALJ found the opinions of these state agency reviewing physicians persuasive, reasoning:

> The Department of Disability Determination (DDD) reviewing physicians assessed the claimant's residual functional capacity based upon a review of the evidence of record without actually examining the claimant. These reviewers determined that the claimant retained the functional capacity to lift and/or carry 20 pounds occasionally and ten pounds frequently. He could stand and/or walk about six hours in an eight-hour workday and sit about six hours in an eight-hour workday. The claimant would be capable of occasional climbing of ramps or stairs, stooping, crouching, and crawling. He would be capable of frequently kneeling and should never climb ladders, ropes, or scaffolds. Furthermore, these reviewers have determined that the claimant should avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation. Additionally, the claimant should avoid all exposure to hazards such as heights and dangerous machinery.
>
> ***
>
> The undersigned has taken into consideration the medical specialties, Social Security disability programs expertise and extensive experience evaluating Social Security disability cases. It has been determined that the function-by-function capabilities opined by the DDD reviewing consultants are supported by the other evidence of record, and has therefore been adopted herein.

R. 21 (citations to record omitted).

V. **DISCUSSION**

Plaintiff argues that the ALJ committed reversible error in interpreting raw medical data in functional terms, and in failing to consider the Veteran's Administration ("VA") Disability Rating Decision. As to both arguments, this Court disagrees.

7

For claims such as Plaintiff's, *i.e.,* those filed after March 27, 2017,[4] the regulations eliminated the hierarchy of medical source opinions that gave preference to treating sources. *Compare* 20 C.F.R. § 404.1527 *with* 20 C.F.R. § 404.1520c(a) (providing, *inter alia*, that the Commissioner will no longer "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [the claimant's] medical sources"). Instead, the Commissioner will consider the following factors when considering all medical opinions: (1) supportability; (2) consistency; (3) relationship with the claimant, including the length of the treating examination, the frequency of examinations, and the purpose of the treatment relationship; (4) the medical source's specialization; and (5) other factors, including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements." 20 C.F.R. § 404.1520c(c).

The regulations emphasize that "the most important factors [that the ALJ and Commissioner] consider when [] evaluat[ing] the persuasiveness of medical opinions and prior administrative medical findings are supportability (paragraph (c)(1) of this section) and consistency (paragraph (c)(2) of this section)." *Id*. at § 404.1520c(a). As to the supportability factor, the regulations provide that "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(1).  As to the consistency factor, the regulations provide that "[t]he more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and

---

[4] As noted above, Plaintiff filed his application on January 7, 2019.

nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be." *Id*. § 404.1520c(c)(2).

The applicable regulations further require the ALJ to articulate his "consideration of medical opinions and prior administrative medical findings" and articulate in the "determination or decision how persuasive he find[s] all of the medical opinions and all of the prior administrative medical findings in [the claimant's] case record." *Id*. at § 404.1520c(b). Specifically, the ALJ must explain how he considered the 'supportability' and 'consistency' factors for a medical source's opinion and the ALJ may—but is not required to—explain how he considered the remaining factors. 20 C.F.R. § 404.1520c(b)(2). However, "[b]ecause many claims have voluminous case records containing many types of evidence from different sources, it is not administratively feasible for [the ALJ] to articulate in each determination or decision how he considered all of the factors for all of the medical opinions and prior administrative medical findings in [the claimant's] case record." 20 C.F.R. § 404.1520c(b)(1).

In the case presently before the Court, it is clear that the ALJ complied with the applicable regulations in his evaluation of the state agency reviewing physicians' opinions.

Plaintiff points to a February 2018 EKG, which was read as "abnormal[] concerning for ischemia in the anterior leads of V2 V3 V4 with chronic T-wave inversions in the lateral leads." R. 497. Plaintiff complains that "there is no indication that the state agency physicians partially credited by the ALJ reviewed this pre-date last insured abnormal EKG" and that, in formulating Plaintiff's RFC, the ALJ therefore improperly interpreted "raw medical data in functional terms." *Plaintiff's Statement of Errors*, ECF No. 12, PageID# 566. It must be noted, first, that an ALJ does not improperly assume the role of a medical expert merely by assessing the medical and non-medical evidence when determining a claimant's RFC. *Poe v. Comm'r of Soc. Sec.,* 342

9

F.App'x 149, 157 (6th Cir. 2009). Moreover, although the reviewing state agency physicians did not specifically refer to this EKG, *see, e.g.,* R. 73-74, 83, they did expressly review other medical records relating to Plaintiff's heart condition, *id.*, and included ischemic heart disease among Plaintiff's severe impairments documented in the record. R. 75, 86, 87 ("The claimant alleges heart issues, which is supported by the MER"). As noted above, the ALJ included coronary artery disease among Plaintiff's severe impairments at step two of the sequential evaluation. R. 17. Plaintiff does not identify any harm suffered by him by reason of the reviewing physicians' failure to expressly refer to the 2018 EKG, nor does Plaintiff point to any increased limitation of function, beyond that found by the ALJ in the RFC, resulting from the EKG. In short, Plaintiff's complaint in this regard is without merit.

Plaintiff also argues that the ALJ erred in failing to consider the 100% VA Disability Rating Decision made in November 2018. In support of this argument, Plaintiff cites a Sixth Circuit decision holding that "an ALJ must at least consider a VA's disability decision and explain reasons for the weight she assigns to it." *Joseph v. Comm'r of Soc. Sec.*, 741 F. App'x 306, 310 (6th Cir. 2018). However, the Court in *Joseph* applied a version of 20 C.F.R. § 404.1504 that is no longer in effect. For cases such as this, *i.e.,* filed after March 27, 2017, the applicable regulation provides:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. Therefore, in claims filed (see § 404.614) on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are

10

> disabled, blind, employable, or entitled to any benefits. However, we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).

20 C.F.R. § 404.1504 (amended March 27, 2017). In other words, under the regulation applicable to Plaintiff's claim, the ALJ must consider and weigh—not the VA's disability rating—but only the evidence underlying that agency's finding of disability. *Id.*

Plaintiff's citation to *Joseph* for the proposition that the ALJ must at least consider the VA's disability determination is therefore incorrect. As stated above, the ALJ was merely required to consider the medical evidence and weigh that evidence in accordance with the applicable regulations. This is exactly what the ALJ did. Because the ALJ's findings and conclusions are supported by substantial evidence and are otherwise consistent with the applicable regulations, this Court must defer to his decision.

## VI.  CONCLUSION

For these reasons, the Court **DENIES** *Plaintiff's Statement of Errors*, ECF No. 12, and **AFFIRMS** the Commissioner's decision.

The Clerk is **DIRECTED** to enter **FINAL JUDGMENT** pursuant to Sentence 4 of 42 U.S.C. § 405(g).


Date: September 29, 2022                         *s/Norah McCann King*
                                                                    NORAH McCANN KING
                                                          UNITED STATES MAGISTRATE JUDGE